943 P.2d 865

**STATE of Arizona, Appellant,**

v.

**Daniel Weldon HACKMAN, Appellee.**

No. 1CA–CR 96–0581.

Court of Appeals of Arizona, Division 1, Department B.

May 13, 1997.

As Amended May 23, 1997.

Review Denied Sept. 16, 1997.

Melvin R. Bowers, Jr., Navajo County Attorney By Kate L. Taber, Deputy County Attorney, Holbrook, for Appellant.

Myrna J. Parker, Navajo County Public Defender, Holbrook, for Appellee.

## OPINION

EHRLICH, Judge.

The state appeals from the trial court's order granting the motion of Daniel Hackman ("defendant") to suppress the testimony of Calvin Graeb. The court found that a violation of the defendant's Sixth Amendment right to counsel necessitated its action. We conclude that the independent-source doctrine is applicable to certain information procured by the prosecution. Accordingly and for the reasons which follow, we affirm in part and reverse in part the judgment of the court.

### FACTS AND PROCEDURAL HISTORY

A woman reported that she had been sexually assaulted by her former boyfriend, the defendant. The defendant was arrested and taken to the Show Low Police Department, from where he was booked into the Navajo County Jail and his personal possessions secured in a property bag. After being advised of his rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the defendant signed a waiver and participated in a videotaped interview with Detective Kim Brewer. In his interview, the defendant admitted the conduct reported by the victim but insisted that she had telephoned him at his friend's house in Phoenix and invited him to her home to engage in the various acts of which she later complained.

The defendant also told Detective Brewer that his friend, Calvin Graeb, could confirm the victim's telephone call to the defendant because he had overheard the defendant on the telephone making such statements as "Oh, you want me to come up." The defendant added that Graeb resided in the Phoenix area and that Graeb's telephone number was located in his property held at the jail.

The defendant was indicted and the public defender appointed to represent him. Before trial, the state's investigator, Jim Currier, was assigned to obtain Graeb's telephone number from the defendant's jail property and to contact Graeb to determine if he had any information regarding the defendant's activities on the night in question, the alleged telephone conversation between the defendant and the victim, and the defendant's relationship with the victim.

Currier reviewed the state's file, including the defendant's videotaped interview. He then drafted a warrant, later signed by a magistrate, to search the defendant's property bag at the jail for Graeb's telephone number. Specifically requested was a search to find any documents regarding a telephone number in the metropolitan Phoenix area for Calvin Graeb.

Currier personally served the warrant on the defendant, who still was in custody. He did not notify defense counsel. At the time of service, Currier asked the defendant the location of Graeb's telephone number and he also elicited additional statements from the defendant. Currier told the defendant that, if Graeb was contacted, Graeb's testimony would assist the defendant in his case. The defendant told Currier that Graeb's number was in his checkbook in his property bag. From this bag, Currier retrieved the defendant's checkbook; Graeb's telephone number was written on a slip of paper located inside.

Subsequently, based upon a violation of his Sixth Amendment right to counsel, the defendant moved to suppress any information obtained by the state as a result of Currier's contact with him.[1] The trial court granted the motion and ordered all of the defendant's statements to Currier and information obtained therefrom suppressed, including Graeb's telephone number. However, the court also ruled that Graeb's name and other information regarding Graeb previously obtained by Detective Brewer need not be suppressed. Reconsideration of the order was denied. The state's motion to dismiss the case without prejudice was granted and the state appealed. ARIZ.REV.STAT.ANN. § 13–4032.

## DISCUSSION

The state argues that the trial court erred when it barred Graeb as a witness because, although there was a violation of the defendant's right to counsel, there was an independent source for the information and the discovery of his telephone number was inevitable. Given the violation of the defendant's constitutional right, we determine whether the information need be suppressed in accord with the exclusionary rule.

### A. Violation of Constitutional Right to Counsel

Currier testified that he was directed to obtain the telephone number of Graeb, a potential witness. Despite the fact that the execution of the warrant could be made by serving the jailer rather than the defendant personally, Currier opted to make personal service of the warrant on the defendant. He said that personal service was a "practice" he tried "to advocate" because, "[I]deally, if [he] was going to search someone's personal property and if they were available, [he] would like to let them know that is what [he was] doing, that is why [he was] doing it." Currier informed the defendant that he had a search warrant for his personal property and asked the defendant if he would assist him in locating Graeb's telephone number.

The defendant told Currier that the telephone number could be found in his checkbook in his property bag. According to Currier, the defendant spontaneously added that telephoning Graeb would do Currier no good because Graeb was out of the country. Currier replied "fine" but told the defendant that the telephone number would assist him in locating Graeb and that Graeb could assist the defendant in defending his case.

Currier admitted that, when he spoke with the defendant, he knew that the defendant had counsel and that the public defender's office had its own investigator. Currier further conceded that the defendant appeared somewhat upset, even irate, during their talk and added that he ended the exchange because he did not want to become involved in a conversation about the case. He then obtained the defendant's property bag, took the checkbook out of it and removed a piece of paper with telephone numbers, including that of Graeb, written on it.

... The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.... [T]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

*Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985) (footnote omitted), relying upon *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). The state, as it recognizes, violated the defendant's Sixth Amendment right when Currier questioned the defendant without his attorney being advised and either present or agreeable to contact with the defendant without counsel.

---

1. The defendant also challenged the validity of the warrant but that allegation subsequently was withdrawn.

■ Currier's service of the search warrant on the defendant and resulting conversation without defense counsel's knowledge and acquiescence cannot be pardoned. The reason given by the state as to why Currier spoke with the defendant without first contacting his attorney was that Currier wanted to be "upfront with everyone." Given the clear mandate from the Supreme Court condemning contact with a defendant without the cognizance of his attorney because of the obvious potential prejudice to the defendant's exercise of his constitutional rights, this rationale is completely unsatisfactory. The trial court properly excluded all statements made by the defendant to Currier. When a state agent like Currier chooses to violate a defendant's Sixth Amendment rights in order to gather additional information, he "must be prepared to live with the consequences of that decision." *United States v. Kimball*, 884 F.2d 1274, 1280 (9th Cir.1989).

### B. Independent-source Doctrine

We now review the trial court's decision regarding how much of the knowledge obtained by the state must be suppressed.[2] The defendant argues that all of the information gained from the statements elicited by Currier must be stricken as the "fruits of the poisonous tree" under the exclusionary rule. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963).

■ The exclusionary rule requires the suppression at trial of evidence gained directly or indirectly as a result of a government violation of the Fourth, Fifth or Sixth Amendments. *Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988).[3] "[T]he appropriate remedy for a violation of *Massiah* includes not only suppression of all evidence directly obtained through governmental misconduct, but also suppression of all evidence that can

properly be designated fruits of that conduct." *Kimball*, 884 F.2d at 1278–79; *see also State v. Bravo*, 158 Ariz. 364, 374–76, 762 P.2d 1318, 1328–30 (1988), *cert. denied*, 490 U.S. 1039, 109 S.Ct. 1942, 104 L.Ed.2d 413 (1989).

However, concurrently with the exclusionary rule there developed what has become known as "the independent-source doctrine." It was first enunciated in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920):

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, . . . .

*See Segura v. United States*, 468 U.S. 796, 814, 104 S.Ct. 3380, 3390, 82 L.Ed.2d 599 (1984); *Nardone v. United States*, 308 U.S. 338, 340–41, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939); *see also* cases cited 84 GEORGE-TOWN L.J. 4 (April 1996), p. 882, n. 690. The question thus becomes whether, notwithstanding the illegality of Currier's contact with the defendant, Graeb's telephone number would have been obtained not through an "exploitation of that illegality," *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417–18, but, rather, from an independent source, thereby rendering it legitimately acquired.

■ The trial court's determination of what constitutes the "fruit" of the state's "poisonous tree" is a mixed question of fact and law implicating constitutional questions. As such, its order to suppress evidence is reviewed *de novo*. *Ornelas v. United States*, 517 U.S. 690, ——, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996). While we view the

---

2. The exclusionary rule applies to the states through the due process clause of the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961), *State v. Bolt*, 142 Ariz. 260, 266, 689 P.2d 519, 525 (1984), and to the Sixth Amendment by *Massiah*, 377 U.S. at 206, 84 S.Ct. at 1203.

3. "[T]he exclusionary rule to be applied as a matter of state law is no broader than the federal rule. The independent source doctrine may be applied under the Arizona constitutional provision, and exclusion of evidence obtained under a legal warrant need not be required because of the prior state constitutional violation." *Bolt*, 142 Ariz. at 269, 689 P.2d at 528.

evidence and draw all reasonable inferences in favor of upholding the court's factual findings, we are not bound by its legal conclusions. *E.g., State v. Fodor,* 179 Ariz. 442, 448, 880 P.2d 662, 668 (App.1994).

> '(T)he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position tha[n] they would have been in if no police error or misconduct occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.' *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984). [Emphasis and ellipsis original.]

*Murray,* 487 U.S. at 537, 108 S.Ct. at 2533.

▇▇▇ In this case, the state knew from Detective Brewer's interview of the defendant that Graeb's telephone number could be found in the defendant's property bag at the jail. This interview was the basis for the warrant authorizing the search of the bag.[4] Thus, the warrant is itself proof of the independent source of the state's knowledge, untainted by the (forthcoming) *Massiah* violation, that Graeb's telephone number was in the defendant's property. To then not apply the independent-source doctrine and, instead, invoke the exclusionary rule puts the state in a worse position than if no violation had occurred. *See Murray,* 487 U.S. at 541, 108 S.Ct. at 2535. The United States and Arizona Supreme Courts each have held in the context of a violation of the Fourth Amendment that "evidence obtained through search under a valid warrant obtained on the basis of information from sources independent of the prior illegal entry is not the 'fruit of the poison [sic] tree' and need not be suppressed under the federal exclusionary rule as applied to the states. *Segura v. United States, supra." Bolt,* 142 Ariz. at 265, 689 P.2d at 524.

▇▇ No evidence was presented by the defendant to contradict the state's contention that Currier drafted the search warrant based upon the interview between Detective Brewer and the defendant and that Currier already knew that Graeb's telephone number was in the defendant's property bag at the jail before he questioned him.[5] The comments made by the defendant with regard to the location of Graeb's telephone number did not provide the state with any evidence that would not have been obtained during a search of the bag for the number. The cause of the *Massiah* violation was Currier's independent, illegal contact with the defendant in violation of the defendant's Sixth Amendment right. Thus, the only proper exclusion as a result of the *Massiah* violation is the defendant's statements made to Currier.

The trial court's suppression of Graeb's telephone number and of his identity as a witness is reversed. The exclusionary rule is inapplicable because the warrant existed as an independent source of information from which the state knew the location of Graeb's telephone number in the defendant's property.

### C. Inevitable-discovery Doctrine

The trial court based its decision, in part, on the state's failure to establish that Graeb's telephone number would have been inevitably discovered by other means. The state argues on appeal that the inevitable-discov-

---

4. Indeed, Currier did not even need a warrant to search the defendant's property bag. *State v. Bible,* 175 Ariz. 549, 599, 858 P.2d 1152, 1202 (1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994) (once defendant's property is legally in possession of law-enforcement agents, agents need no warrant to search property; "this type of a warrantless seizure does not violate a defendant's Fourth Amendment rights.").

5. The defendant argues that Currier did not conduct the search pursuant to the warrant since he failed to inventory the contents of the bag and he was not able to testify to anything else in the bag. The fact that Currier searched only the defendant's checkbook and not his entire bag, the defendant contends, is sufficient evidence that Currier relied solely on the defendant's statements to him rather than on the warrant to obtain Graeb's telephone number. The simple response is that Currier was neither obliged to inventory the contents of the bag nor was he compelled by the warrant to search for more than that for which he was looking.

ery doctrine is irrelevant to the independent-source doctrine, citing *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599. *See Murray*, 487 U.S. at 535, 108 S.Ct. at 2532. However, the inevitable-discovery doctrine not only depends on the validity of the independent-source doctrine, it is derived from it. *Id.* at 539, 108 S.Ct. at 2534.

> *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.

*Id.* (emphasis original).

Nonetheless, given that the state demonstrated that the information from Graeb was obtained legally independently of Currier's violation of the defendant's Sixth Amendment right, we need not discuss the court's rejection of the state's inevitable-discovery hypothetical.

## CONCLUSION

We affirm the trial court's grant of the defendant's motion to suppress all statements made by the defendant to Currier in violation of the defendant's Sixth Amendment right to counsel. However, we reverse the court's order suppressing Graeb's telephone number and existence as a witness pursuant to the independent-source doctrine. We remand this case for further proceedings consistent with this decision.

GERBER, J., concurs.

NOYES, Presiding Judge, dissenting.

Having probable cause to believe that a phone number might be in a garbage bag is not the same as having acquired that number. The majority reverses based on the State's "independent source" for acquiring the phone number—the search warrant. I agree that the independent source doctrine would apply if the phone number had been acquired by an untainted search. *See Murray v. U.S.*, 487 U.S. 533, 538, 108 S.Ct. 2529, 2533–34, 101 L.Ed.2d 472 (1988) (stating that, as originally applied in the exclusionary rule context, the term "independent source" referred "to that particular category of evidence acquired by an untainted search which is identical to the evidence unlawfully acquired").

The problem here is that execution of the search warrant became entwined with—and tainted by—the *Massiah* violation. Because the *Massiah* violation tainted execution of the search warrant, the "independent source" theory does not apply and the State must rely on an "inevitable discovery" theory. But the State offered no evidence to support this theory and so the trial court cannot be faulted for rejecting it. Defendant, on the other hand, proved that the officer actually acquired this evidence by committing a rather astounding *Massiah* violation.

On the facts presented, I would affirm the suppression order.