14 P.3d 303

The STATE of Arizona, Appellant/Cross–Appellee,

v.

John Eric ROSENGREN, Appellee/Cross–Appellant.

No. 2 CA–CR 99–0470.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 16, 2000.

Review Denied April 24, 2001.

114

Barbara LaWall, Pima County Attorney by Elizabeth Tyszko, Tucson, Attorneys for Appellant/Cross–Appellee.

Piccarreta & Davis, P.C. by Michael L. Piccarreta and Jefferson Keenan, Tucson, Attorneys for Appellee/Cross–Appellant.

## OPINION

PELANDER, Judge.

¶ 1 The state appeals from the trial court's order suppressing certain evidence relevant to the sole charge of manslaughter against defendant/appellee John Rosengren. Rosengren cross-appeals from that order, contend-

ing the trial court should have dismissed the case with prejudice. We affirm.

## BACKGROUND

■ ¶ 2 We view the evidence presented at the suppression hearing in the light most favorable to sustaining the trial court's ruling. *State v. Bentlage*, 192 Ariz. 117, ¶ 2, 961 P.2d 1065, ¶ 2 (App.1998). At approximately 1:30 a.m. on February 28, 1999, Rosengren was the driver in a single-vehicle, rollover accident that resulted in the death of his passenger. After the accident, paramedics at the scene examined Rosengren, who told them he had been drinking. The paramedics detected no signs of alcohol ingestion or impairment.

¶ 3 Rosengren also told investigating police officers at the scene that he had consumed alcohol before the accident. The on-scene officers observed the following possible signs of alcohol impairment on Rosengren: a strong odor of intoxicants on his breath, flushed face, bloodshot and watery eyes, slurred speech, a noticeable stagger while walking, and a sideways body sway. An officer read Rosengren the *Miranda*[1] warnings, and Rosengren invoked his right to remain silent. The officer interpreted that as a refusal to perform any field sobriety tests and did not ask Rosengren if he would perform them. Unbeknownst to Rosengren, the officer audiotaped and videotaped the investigation.

¶ 4 The police handcuffed Rosengren and transported him to St. Mary's Hospital to obtain a blood sample, arriving there at 2:32 a.m. Officers then urged Rosengren several times to provide a blood sample and told him he could go home after doing so. At 2:39 a.m., Rosengren asked to contact his father and informed the officers that the father was an out-of-state attorney. The police denied that request and instead offered Rosengren the opportunity to call any local attorney listed in the Tucson telephone book, in fact, urging him to do so. Rosengren declined that offer. He also refused to give a blood sample.

¶ 5 After declining Rosengren's request that he call his father, and after deciding to arrest Rosengren, one of the officers administered a horizontal gaze nystagmus (HGN) test by observing Rosengren's eyes while using a pen as a stimulus. The officer then formally arrested Rosengren at 2:58 a.m. for driving under the influence of intoxicating liquor (DUI). The officer informed Rosengren of Arizona's implied consent law, A.R.S. § 28–1321, and again denied his repeated request to talk to his father. Rosengren still refused to give a blood sample.

¶ 6 At 3:15 a.m., the police obtained a telephonic search warrant and obtained two gray-topped tubes of Rosengren's blood, drawn by a hospital phlebotomist at 3:28 a.m. The phlebotomist also drew two additional, red-topped tubes of Rosengren's blood for hospital purposes. At 4:00 a.m., an officer booked Rosengren into the Pima County jail, where he apparently remained until sometime later that morning.

¶ 7 Rosengren was indicted for manslaughter. Alleging a violation of his right to counsel and to due process, Rosengren moved to dismiss the charge with prejudice. Following an evidentiary hearing, the trial court found that the police had violated Rosengren's "right to remain silent and right to consult with counsel of his choice in a situation where such would not interfere with the investigation." Based on those findings, the trial court suppressed the following evidence: the results of the state's blood test and of the HGN test, Rosengren's refusal to voluntarily submit to a blood test, and all observations and statements of Rosengren that occurred after his arrival at the hospital at 2:32 a.m.

¶ 8 The trial court granted the state's motion to dismiss the case without prejudice for purposes of challenging the suppression order. *See State v. Million*, 120 Ariz. 10, 583 P.2d 897 (1978). This appeal and cross-appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 13–4032(6).

## STANDARD OF REVIEW

■ ¶ 9 Generally, a trial court's ruling on a motion to dismiss the indictment or to

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

suppress evidence will not be overturned absent an abuse of discretion. *State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985); *State v. Pecard*, 196 Ariz. 371, ¶ 24, 998 P.2d 453, ¶ 24 (App.1999). We defer to the trial court's factual findings that are supported by the record and not clearly erroneous. *Id.* at ¶ 7 n. 1; *Mack v. Cruikshank*, 196 Ariz. 541, ¶ 6, 2 P.3d 100, ¶ 6 (App.1999). Although we view the evidence presented at the suppression hearing and reasonable inferences therefrom in the light most favorable to upholding the trial court's factual findings, we are not bound by its legal conclusions. *State v. Hackman*, 189 Ariz. 505, 508–09, 943 P.2d 865, 868–69 (App.1997). To the extent suppression of evidence is based on exclusionary rule principles, we review the suppression order de novo. *Id.* We also review de novo Rosengren's due process claims. *Mack*, 196 Ariz. 541, ¶ 6, 2 P.3d 100, ¶ 6. Finally, we review the trial court's choice of remedy for the violation of Rosengren's rights for an abuse of discretion. *Pecard*, 196 Ariz. 371, ¶ 48, 998 P.2d 453, ¶ 48. *But cf. Mack*; *State v. Keyonnie*, 181 Ariz. 485, 892 P.2d 205 (App.1995).

## DISCUSSION

 ¶ 10 Under Rule 6.1(a), Ariz.R.Crim. P., 16A A.R.S., Rosengren had "the right to consult in private with an attorney, or the attorney's agent, as soon as feasible after [he was] taken into custody."[2] That rule "recognizes the federal and state constitutional right to counsel." *Kunzler v. Pima County Superior Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987). The trial court found, and the state concedes, that the police "acted improperly" and intentionally violated Rosengren's right to counsel by not honoring his request to speak with his father, an attorney. The trial court also found, and the state does not contest, that affording Rosengren that opportunity would not have unduly interfered with the police investigation. *See id.* (state "may not unreasonably restrict" in-custody suspect's "right to an attorney"); *State v. Holland*, 147 Ariz. 453, 455, 711 P.2d 592, 594

(1985) (state may not, "without justification, prevent access between a defendant and his lawyer, if available, in person or by telephone, when such access would not unduly delay the D[U]I investigation and arrest").

¶ 11 In view of the trial court's uncontested factual findings and the state's concessions on appeal, the only issue we must address is whether the court chose an appropriate remedy for the state's violation of Rosengren's rights. The state contends the only "appropriate remedy is to suppress the fruits of the [officers'] illegal conduct," which, the state argues, are limited to any "statements derived from custodial interrogation" after Rosengren invoked his *Miranda* rights. In contrast, Rosengren contends the trial court should have dismissed the case with prejudice or, alternatively, precluded the state "from admitting evidence relating to his purported intoxication." If Rosengren is correct, we need not address separately the specific items of evidence that the trial court suppressed. Therefore, we address the cross-appeal first.

### I. Request for Dismissal

 ¶ 12 As our supreme court has noted:

[I]n a D[U]I investigation, it is crucial for both the state and the defendant to gather evidence relevant to intoxication close in time to when the defendant allegedly committed the crime. Otherwise, any alcohol that may have been in the blood will have decomposed before the blood can be tested.

*McNutt v. Superior Court*, 133 Ariz. 7, 10 n. 2, 648 P.2d 122, 125 n.2 (1982). In view of the evanescent nature of alcohol in the bloodstream, such evidence may include not only chemical or other scientific evidence, such as a blood or breath test, *McNutt*, but also other forms of potentially exculpatory evidence, such as observations by "non-police witnesses" of a suspect's physical appearance and function. *State ex rel. Webb v. City Court*, 25 Ariz.App. 214, 216, 542 P.2d 407, 409 (1975). *See also United States v. Can-*

---

**2.** The Sixth Amendment right to counsel arises only when a defendant is formally charged with a crime. *Moran v. Burbine*, 475 U.S. 412, 428–

32, 106 S.Ct. 1135, 1144–47, 89 L.Ed.2d 410, 425–28 (1986); *State v. Hall*, 129 Ariz. 589, 592, 633 P.2d 398, 401 (1981).

*ane*, 622 F.Supp. 279, 281 (W.D.N.C.1985) (recognizing need for suspect's "access to his counsel, friends, relatives, or some disinterested person within a relatively short time after his arrest").[3] Thus, a DUI suspect has a qualified due process right to gather independent evidence of sobriety while it still exists, so long as exercise of that right does not unduly delay or interfere with the law enforcement investigation. *See Kunzler; Holland; Webb. See also Montano v. Superior Court*, 149 Ariz. 385, 389, 719 P.2d 271, 275 (1986). And, "[t]he right to counsel is an extension of the doctrine that defendants have the right to gather independent exculpatory evidence." *State v. Transon*, 186 Ariz. 482, 485, 924 P.2d 486, 489 (App.1996).

¶ 13 When the state unreasonably interferes with a DUI suspect's ability "to attempt to gather evidence exculpating him on the issue of intoxication," "[d]ismissal of the case with prejudice is the appropriate remedy because the state's action foreclosed a fair trial by preventing [the defendant] from collecting exculpatory evidence no longer available." *McNutt*, 133 Ariz. at 10, 648 P.2d at 125. *See also Keyonnie*, 181 Ariz. at 487, 892 P.2d at 207. Our supreme court has explained why dismissal is appropriate under such circumstances:

> Because we value the right to counsel so highly, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), when the right to counsel is violated, then the conviction obtained as a direct result must be set aside. This is the rule because it is impossible to foresee what advice would have been given defendant had he been able to confer privately with counsel. It is quite possible that he would have been instructed to obtain, in some manner, exculpatory evidence.

*Holland*, 147 Ariz. at 456, 711 P.2d at 595. *See also State v. Sanders*, 194 Ariz. 156, ¶ 9, 978 P.2d 133, ¶ 9 (App.1998) ("The remedy for a violation of the right to counsel [in the DUI context] is dismissal.").

¶ 14 Relying primarily on *Holland* and *Sanders*, Rosengren contends the state's admitted violation of his right to counsel requires dismissal with prejudice of the charge. According to him, "the crux of this case" is the state's violation of his due process "right to develop evidence of lack of impairment and lack of signs and symptoms of impairment in order to counter the police officers' observations." Rosengren argues that, had he been permitted to contact his father,

> the father could have arranged to have Rosengren observed by an attorney, physician or investigator, to have his voice tape recorded to show that he was not slurring his words, to have him videotaped up close to show that his eyes were not bloodshot and his face was not flushed, and to arrange for independent HGN or other field sobriety tests. The ability to gather this evidence is lost forever.

¶ 15 Addressing similar arguments below, the trial court noted that Rosengren might "have lost the opportunity to gather additional exculpatory evidence in the form of examinations by medical personnel or lay witnesses or investigators and close-up videography of [his] person and face." Although Rosengren presented no evidence that he could or would have undertaken such steps or that his father would have offered such advice, the trial court ruled:

> The defense makes a very strong case for outright dismissal of all charges based upon the intentional violation of defendant's right to counsel and the resulting interference with defendant's ability to garner exculpatory evidence. The court does not regard defense claims that additional exculpatory evidence could have been gathered as purely speculative, nor does *Holland* allow the Court to so assume.

3. As the court noted in *State v. Carr*, 128 Idaho 181, 911 P.2d 774, 777–78 (App.1995):

 [T]he person contacted by the arrestee could arrange for a photograph to be taken to demonstrate that the arrestee's eyes were not bloodshot but were clear and white; prepare a tape recording to demonstrate that the arrestee had clear speech; videotape the arrestee to show that he or she has balance and is able to walk in a straight line; perform a gaze nystagmus test to show smooth eye pursuit at all angles; or simply serve as a witness who observed the aforementioned characteristics of sobriety.

Nevertheless, most of the cases which support defendant's request for due process dismissal involved situations where independent blood tests were denied or the accuracy of the tests obtained by the State could not be verified.

¶ 16 Based on the evidence presented at the suppression hearing, the trial court found that Rosengren had been "provided with several blood samples taken at or very near the time that police obtained a blood sample pursuant to a telephonic search warrant." The court further found that Rosengren "has available to him some exculpatory evidence in the form of video and audio-taped footage of [his] physical and mental capabilities at the accident scene." Based on its review of the videotape, the trial court noted that Rosengren "did not appear to sway and stagger and was capable of quickly and concisely answering questions of a biographical nature." Based on its factual findings, the trial court ruled that Rosengren "is not forever left without exculpatory evidence," noting that he had "secured testable blood and has the favorable observations of the paramedics and videotape available at any future trial." Accordingly, the court ruled that the charge against Rosengren "need not be dismissed."

¶ 17 For several reasons, we find no error in that ruling. First, violation of the right to counsel and the concomitant due process right to gather independent evidence of sobriety requires outright dismissal only if evidence of intoxication is essential to the prosecution of the offense. *See Smith v. Cada*, 114 Ariz. 510, 514, 562 P.2d 390, 394 (App.1977); *Smith v. Ganske*, 114 Ariz. 515, 517, 562 P.2d 395, 397 (App.1977). Although it appears from the record and briefs that the state intended to rely on Rosengren's alleged intoxication to prove his recklessness, an essential element of the manslaughter charge against him, intoxication is not an essential element of that charge. *See* A.R.S. § 13–1103(A)(1); *State ex rel. Romley v. Brown*, 168 Ariz. 481, 483, 815 P.2d 408, 410 (App.1991) ("In a prosecution for reckless manslaughter, a defendant's BAC [blood alcohol concentration] at the time of the incident is relevant evidence, but not an essential element as defined by the statute.").

¶ 18 Second, despite the broad language in *Sanders*, dismissal is not the exclusive or automatic remedy for a denial of the right to counsel, even in cases in which the defendant's alleged intoxication is essential to proving the offense. *See Keyonnie*. Even *Holland*, on which the court in Sanders relied, did not establish an absolute requirement of dismissal, regardless of the circumstances.

¶ 19 Third, and more importantly, in determining whether dismissal is required, the pertinent cases primarily have focused on whether the violation of right to counsel has "foreclosed a fair trial by preventing [the defendant] from collecting exculpatory evidence no longer available." *McNutt*, 133 Ariz. at 10, 648 P.2d at 125. *See also Keyonnie*. And, as the trial court correctly noted, most of the cases in which dismissal was required involved police interference with a DUI suspect's ability or attempt to obtain independent blood testing.[4] This case does not present such concerns. As noted in ¶ 16, the trial court expressly found that Rosengren "was provided with several blood samples taken at or very near the time that police obtained a blood sample pursuant to a telephonic search warrant" and, thus, "secured testable blood." In addition, the rec-

---

4. *See, e.g., McNutt* (police inexplicably denied defendant's request to telephone his attorney and ignored his request for independent blood test, instead holding him for two-and-one-half hours while any alcohol dissipated from his body); *Amos v. Bowen*, 143 Ariz. 324, 327, 693 P.2d 979, 982 (App.1984) (dismissal required when police, albeit for good reason and without bad motive, "delayed a period of two or more hours in the process of proceeding to obtain an independent blood test"); *Cada*, 114 Ariz. at 514, 562 P.2d at 394 (state "may not unreasonably interfere with an accused's reasonable attempts to secure, at his own expense, a blood or other scientific test for the purpose of attempting to establish evidence of his sobriety at or near the crucial time under consideration"); *Ganske*, 114 Ariz. at 516, 562 P.2d at 396 (police interference with defendant's attempted release on bail and instead holding him for eight hours precluded him from obtaining independent blood test; it was interference with obtaining test that gave rise to "claimed denial of 'fair-play' in [that] case, not that he could have pursued other alternatives").

ord reflects that Rosengren declined any independent test of his blood, albeit after the police had denied his right to counsel. Because Rosengren was still in handcuffs at the hospital, one of the officers initialed the pertinent "*Montano* form" for him and later wrote on that form that Rosengren had "declined to have a sample drawn by a physician of his choosing." In sum, even assuming that Rosengren's alleged intoxication is essential to the manslaughter charge in this particular case, the circumstances here do not compel dismissal of the charge.[5] The trial court did not abuse its discretion in refusing to do so. *Pecard.*

## II. Scope of Remedy

¶ 20 Although the state concedes that the officers clearly violated Rosengren's rights to counsel and to remain silent, it contends "the trial court grievously erred by suppressing the evidence that it did." The state essentially argues that well-established exclusionary rule principles should control here, such that only evidence "tainted" by the police misconduct should be suppressed. *See Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472, 480 (1988); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). According to the state, only statements Rosengren made in response to custodial interrogation after he invoked his *Miranda* rights are tainted and, therefore, subject to suppression.

¶ 21 In a related argument, the state contends it had a statutory right and valid evidentiary basis to obtain and execute the search warrant for Rosengren's blood sam-

ple, unrelated to any violation of Rosengren's rights.[6] *See* A.R.S. § 28–1321(D)(1); *State v. Clary,* 196 Ariz. 610, 2 P.3d 1255 (App.2000). Accordingly, the state asserts that the independent source doctrine and inevitable discovery rule support admission of the BAC test result. *See State v. Soto,* 195 Ariz. 429, 432, 990 P.2d 23, 26 (App.1999) ("The warrant exceptions of inevitable discovery and independent source relate because they serve to purge the taint of impermissible law-enforcement activity, causally disconnecting the acquisition of the evidence from the illegality.").

¶ 22 The state's argument has a ring of validity and squares with federal exclusionary rule jurisprudence. In general, that rule applies to illegally obtained evidence and requires suppression only when a causal connection exists between a constitutional violation and the government's obtaining of such evidence. *Nix v. Williams,* 467 U.S. 431, 441–47, 104 S.Ct. 2501, 2507–11, 81 L.Ed.2d 377, 386–90 (1984). *See also Hackman,* 189 Ariz. at 508, 943 P.2d at 868 ("The exclusionary rule requires the suppression at trial of evidence gained directly or indirectly as a result of a government violation of the Fourth, Fifth or Sixth Amendments."). Thus, when evidence would have been obtained despite the violation of a defendant's Sixth Amendment right to counsel, "there is no rational basis to keep that evidence from the jury." *Nix,* 467 U.S. at 447, 104 S.Ct. at 2510, 81 L.Ed.2d at 389. As the Court explained in *Nix,* when "the State has gained no advantage at trial and the defendant has suffered no prejudice[,] ... suppression of the evidence would operate to undermine the

---

5. We also reject Rosengren's apparent argument that the state's alleged bad faith, or "[d]eliberate and intentional misconduct," requires dismissal. First, the trial court did not expressly find that the officers' violation of Rosengren's right to counsel was in bad faith. Second, as noted above, dismissal is not necessarily mandated unless the state's action forecloses the possibility of a fair trial. *McNutt; Keyonnie.* Bad faith alone does not necessarily preclude a fair trial. *See United States v. Morrison,* 449 U.S. 361, 365 n. 2, 101 S.Ct. 665, 668 n. 2, 66 L.Ed.2d 564, 569 n. 2 (1981) (dismissal appropriate only when "there was continuing prejudice which, because it could not be remedied by a new trial or suppression of evidence, called for a more drastic treatment").

6. In separate motions to suppress, Rosengren argued that the officers had illegally arrested him and had obtained an invalid search warrant. Although the trial court deemed those motions moot in light of its ruling on the denial of counsel/due process issue, the court nonetheless stated that it "would have ruled that probable cause to arrest existed" before the officers transported Rosengren to the hospital based on their observations and Rosengren's voluntary statements at the accident scene. In view of our disposition, we do not address the validity of the arrest or search warrant.

adversary system by putting the State in a worse position than it would have occupied without any police misconduct." *Id.* at 447, 104 S.Ct. at 2511, 81 L.Ed.2d at 390. *See also Segura v. United States*, 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984), *quoting Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939) ("[E]vidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint.'").

¶ 23 In addition, "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564, 568 (1981). *See also State v. Warner*, 150 Ariz. 123, 128, 722 P.2d 291, 296 (1986) ("[W]here the state invades the attorney-client relationship and interferes with a defendant's right to counsel the state has the burden to demonstrate that no evidence introduced at trial was tainted by the invasion."). Thus, if the government obtains evidence illegally as a direct or indirect result of a Sixth Amendment violation, "the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted." *Morrison*, 449 U.S. at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 568. *See also Hackman.*

¶ 24 In sum, in the Sixth Amendment context, controlling federal precedent requires suppression of only tainted, illegally obtained evidence. In this case, Rosengren refused to submit to either a voluntary or implied consent blood test after the police violated his right to counsel. Thus, the state did not obtain its BAC evidence as a direct or indirect result of the violation. Because that evidence was not tainted by, or causally connected to, the violation of Rosengren's right to counsel, federal exclusionary rule principles would not require suppression of that evidence. And, that Rosengren could have obtained independent testing of one of his hospital-drawn blood samples, declined an independent blood draw by a physician of his own choosing, and neither he nor any attorney could have prevented the police from seeking and obtaining the search warrant ultimately used for extracting his blood strengthen the state's position.

¶ 25 If this case involved denial of right to counsel in connection with an offense in which BAC evidence played no significant role, we would be hard pressed to reject the state's argument. This action, however, involves an admitted violation of Rosengren's right to counsel under Rule 6.1, Ariz.R.Crim. P., and, more importantly, the resulting infringement of his due process right to obtain independent exculpatory evidence bearing on his alleged alcohol impairment, an issue the state deems pivotal to its case. In this particular area of the law, our courts have created special rules that transcend, or at least differ from, standard exclusionary rule principles.

¶ 26 Despite their surface appeal, the state's arguments have one major flaw: They either directly contravene or cannot be reconciled with pertinent Arizona authority. For example, in Kunzler, our supreme court stated that, when the state unnecessarily denies a defendant's "right to consult his attorney, any evidence obtained following this violation of defendant's right to counsel must be suppressed." 154 Ariz. at 570, 744 P.2d at 671. *See also State v. Juarez*, 161 Ariz. 76, 775 P.2d 1140 (1989) (evidence of breath test suppressed because defendant denied opportunity to contact counsel before test although allowed to contact counsel immediately after test). *Keyonnie*, 181 Ariz. at 487, 892 P.2d at 207 (when "the defendant's right to counsel was admittedly violated but his ability to gather exculpatory evidence was not hindered[,] . . . the appropriate remedy for such a violation [wa]s suppression of the breath test results"). This court, of course, may not disregard or deviate from controlling decisions of our supreme court. *State v. McShine*, 131 Ariz. 485, 487, 642 P.2d 482, 484 (App.1982). Although one may question the rationale and wisdom of the blanket rules set forth in cases such as *Holland* and *Kunzler*, we are not free to depart from them.

¶ 27 In short, none of the pertinent Arizona cases involving violation of the right to counsel and related due process concerns in the DUI context have limited suppression only to evidence that is "tainted" by the violation. Our supreme court, in no uncertain terms, has stressed the importance of and has assiduously protected the right to counsel in this area. When that right is violated, as it admittedly was here, the court has imposed stringent remedies, ranging from suppression of any evidence obtained after the violation to outright dismissal of the action. Moreover, when the state violates a defendant's due process right to obtain independent, potentially exculpatory evidence of sobriety, as the trial court found, the violation equates to a de facto suppression of any such evidence that the defendant might have obtained but for the violation. *See Cada*, 114 Ariz. at 512–13, 562 P.2d at 392–93 (police interference with defendant's gathering of independent evidence of sobriety analogous to suppression of evidence favorable to defendant and violates due process); *cf. Webb*, 25 Ariz.App. at 215–16, 542 P.2d at 408–09.

¶ 28 The inability to seek other independent evidence relevant to a suspect's sobriety level during the critical time is particularly significant in a case such as this, in which the defendant is not charged with illegally driving with a BAC over a particular level, but rather, with reckless manslaughter. Actual impairment, not the BAC level per se, is the most critical factor in the recklessness element of that charge. Having refused Rosengren's repeated requests to speak with his counsel of choice, his father, and having essentially sequestered Rosengren for several hours, thereby depriving him of the opportunity to obtain independent, nonscientific evidence during the critical window of availability, the state should not be permitted to present a one-sided story on the issue of impairment by utilizing incriminating evidence obtained after the violation of his right to counsel. A contrary result, based on the notion that only "tainted" evidence should be suppressed, arguably would violate principles of fundamental fairness, on which the due process guarantee is based. *See Oshrin v. Coulter*, 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984).

¶ 29 Contrary to the state's contention, the trial court's ruling does not improperly expand the exclusionary rule to hinder the truth-seeking process. Rather, a defendant's "right to present his or her version of the events at issue" implicates "a due process fourteenth amendment right," which "goes to the heart of insuring the validity of the fact-finding process." *McNutt*, 133 Ariz. at 10 n. 3, 648 P.2d at 125 n. 3. The basic premise of the state's argument—that the trial court improperly suppressed untainted, lawfully obtained evidence based on the exclusionary rule—is flawed. The trial court did not suppress evidence on that basis, but rather, on constitutional due process grounds. The state admittedly violated Rosengren's right to counsel. But it was the effect of that violation—an interference with Rosengren's due process right to gather contemporary, independent exculpatory evidence of sobriety—that compelled the suppression.

¶ 30 That the state ultimately obtained Rosengren's blood sample via a search warrant does not change the result. The state may not use a search warrant to escape the consequences of a denial of due process. *See State v. Lewis*, 115 Ariz. 530, 533, 566 P.2d 678, 681 (1977). *But cf. City of Ann Arbor v. McCleary*, 228 Mich.App. 674, 579 N.W.2d 460, 465 (1998) (any error in police not granting defendant and counsel privacy while they discussed whether defendant would submit to breathalyzer was harmless when police obtained blood sample pursuant to search warrant and "police would have obtained the same incriminating information from defendant no matter how his counsel had advised him"). Nor may the state rescue the BAC evidence and avoid the effect of the police misconduct through the independent source or inevitable discovery doctrines. The law is clear that, had Rosengren succumbed to the police pressure by voluntarily giving a blood sample after the officers violated his right to counsel, evidence of the blood test result would have been suppressed. *Kunzler; Keyonnie*. It would be incongruous to allow the state to introduce the BAC test result when Rosengren resisted the officers' tactics, refused to waive his rights, and ultimately had blood extracted

pursuant to the warrant. The trial court did not err in suppressing the blood test evidence. *See State v. Carr*, 128 Idaho 181, 911 P.2d 774, 778 (App.1995) (upholding suppression of state's BAC test as appropriate remedy when police denied suspect's request to telephone her attorney and held her incommunicado for unreasonable time after administering that test).

¶ 31 Nor do we find error in the trial court's suppression of other, post-violation evidence. The state's contention that the trial court erred by suppressing evidence of Rosengren's refusal to voluntarily submit to a blood test is without merit. Suppression of that evidence is required, not because of any Fifth Amendment violation, but rather, because of the state's violation of Rosengren's right to counsel. *See Juarez; Kunzler; State v. Thornton*, 172 Ariz. 449, 452, 837 P.2d 1184, 1187 (App.1992). For that same reason, the trial court did not err in suppressing evidence of the HGN test results. Indeed, the state conceded the propriety of that ruling at oral argument.

¶ 32 The trial court also suppressed all statements by and alleged observations of Rosengren that occurred after his arrival at the hospital at 2:32 a.m. The court essentially attempted to level the playing field by suppressing state evidence obtained after that time. Given the various and repeated infringements of Rosengren's rights from that time forward, we cannot fault this aspect of the trial court's ruling or the court's choice of sanction to remedy the constitutional violations. As the court aptly noted, determination of an appropriate remedy in this case "requires a balancing of the public interest in prosecuting criminal offenses with the notion that the remedy for violation of crucial constitutional rights must not render such rights hollow or illusory." To limit the remedy in the manner that the state proposes would markedly and unfairly shift that balance.

¶ 33 The state's reliance on *State v. Schulze*, 116 Wash.2d 154, 804 P.2d 566 (1991), is unavailing. Under Washington law, unlike Arizona law, a suspect has no right to consult an attorney before a blood draw and no option of refusing to submit to a blood test.

*Id.* at 570, 572. Moreover, the opinion does not clearly reflect that the police denied the suspect's right to counsel after the blood draw. Finally, the holding in *Schulze* that a violation of the right to counsel will result in suppression of evidence only when the evidence is tainted by the violation finds no support in Arizona law, which requires suppression of "any evidence obtained following [a] violation of defendant's right to counsel." *Kunzler*, 154 Ariz. at 570, 744 P.2d at 671. Even were we to agree with the rationale and conclusion in *Schulze*, we are constrained to follow our supreme court's precedent. *McShine*.

¶ 34 Finally, we reject the suggestion in the state's reply brief that "[s]ome form of *Willits* [7] instruction" would adequately remedy the due process violation. Such an instruction is appropriate when a defendant proves that he was prejudiced by the state's loss or destruction of or failure to preserve material and reasonably accessible evidence that tended to exonerate him. *State v. Atwood*, 171 Ariz. 576, 627, 832 P.2d 593, 644 (1992). This case does not involve such a scenario, and a *Willits* instruction is inapplicable and insufficient under these circumstances. *See Oshrin*, 142 Ariz. at 111–12, 688 P.2d at 1003–04; *cf. Snyder v. State*, 930 P.2d 1274 (Alaska 1996) (*Willits*-type presumption was appropriate sanction in DUI case in which state had no BAC evidence and had deprived defendant of opportunity to obtain independent blood test).

¶ 35 The trial court did not abuse its discretion in fashioning an appropriate remedy for the violation of Rosengren's rights. *Carter; Pecard*. Accordingly, the trial court's order suppressing evidence is affirmed.

CONCURRING: J. WILLIAM BRAMMER, Presiding Judge, and M. JAN FLÓREZ, Judge.

7. *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).