NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CARLOS J. GARFIO, *Appellant.*

No. 1 CA-CR 18-0745
FILED 8-22-2019

Appeal from the Superior Court in Maricopa County
No.  CR 2018-104567-001
The Honorable Susan M. Brnovich, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

---

**C A M P B E L L**, Judge:

¶1        Carlos Garfio appeals his conviction and sentence for possession of dangerous drugs for sale asserting that his *Miranda* rights were violated. *Miranda v. Arizona*, 384 U.S. 436 (1966). A person is entitled to *Miranda* warnings when in custody and subject to interrogation. *Id*. Because we conclude the officer's question did not amount to an interrogation, we affirm.

## BACKGROUND

¶2        A sergeant with the Tucson Police Department, working with federal law enforcement, approached Officer Hurley and asked him to conduct a traffic stop of a Toyota Camry that would soon be driving past. Hurley saw the vehicle make several improper lane changes and initiated a traffic stop. Hurley asked the driver and passenger, Garfio, for identification. Garfio was sitting in the backseat with a backpack between his legs. Hurley ran a standard warrant check and learned Garfio had an outstanding misdemeanor warrant for arrest. Hurley asked Garfio to exit the vehicle and placed him under arrest.

¶3        Officer Hurley noticed that Garfio left the backpack in the vehicle and asked whether it belonged to him. Garfio responded "yes." Hurley then asked the driver to whom the backpack belonged, and the driver said it was Garfio's. The driver explained that Garfio was a fare from Google rideshare—a car service where passengers request rides, similar to Uber or Lyft. Hurley took Garfio's backpack and searched it to ensure there were no weapons. In the backpack, he found approximately 12 pounds of methamphetamine.

¶4        Officer Hurley again asked the driver if the backpack belonged to him, and he responded "no." Hurley searched the rest of the vehicle and after finding no other contraband, released the driver and transported Garfio to jail. Hurley read Garfio his *Miranda* rights at the jail. Using a slang term for methamphetamine, he told Garfio they found "it" in

his backpack. Garfio nodded his head yes in response. Hurley asked Garfio to explain why it was in there, and Garfio subsequently invoked his right to remain silent. Garfio was charged with possession of dangerous drugs for sale.

¶5         Before trial, Garfio moved to suppress the statement he made to Officer Hurley—his "yes" answer to Hurley's question about ownership of the backpack. Garfio argued he was subjected to a custodial interrogation before being read his *Miranda* rights. The court denied the motion, finding the question did not represent a custodial interrogation, but was instead the sort of question posed "normally attendant to arrest." Hurley was arresting Garfio on an outstanding warrant and only asked about the backpack to ensure that Garfio had not inadvertently left his possessions behind. The court explained that Hurley had no information that Garfio was the focus of the stop; he was taken into custody because he "happened to have a warrant." Hurley testified that he asked Garfio if the bag belonged to him so he could take his property with him.

¶6         A jury ultimately convicted Garfio of possession of dangerous drugs for sale. The superior court sentenced Garfio as a category 3 repetitive offender to the presumptive term of 15.75 years in prison. This timely appeal followed.

## DISCUSSION

¶7         Garfio challenges the superior court's denial of his motion to suppress for two reasons. First, he argues the superior court erred in finding that the question about ownership of the backpack was the type typically attendant to arrest. Second, he argues the question was intended to elicit an incriminating response, basing this argument on the officer's specialized training in narcotics interdiction.

¶8         We review the superior court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing. *State v. Wilson*, 237 Ariz. 296, 298, ¶ 7 (2015). We view the evidence in the light most favorable to sustaining the superior court's ruling and defer to the court's factual findings unless clearly erroneous. *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000). We review legal conclusions, including the admissibility of statements, de novo. *Id.*

¶9         Under the Fifth Amendment of the United States Constitution, a person is shielded from compulsory self-incrimination. *Miranda*, 384 U.S. at 478–79. To ensure this right is upheld, law enforcement officers must provide *Miranda* warnings before interrogating a person in

custody. *Id.* "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). However, "not every question posed in a custodial setting is equivalent to interrogation," and *Miranda* warnings are only required if "the questions are reasonably likely to elicit an incriminating response." *State v. Waggoner*, 139 Ariz. 443, 445 (App. 1983). Questions that are "normally attendant to arrest and custody" do not constitute interrogation for purposes of *Miranda*. *Innis*, 446 U.S. at 301; *State v. Landrum*, 112 Ariz. 555, 559 (1976) (explaining *Miranda* does not apply to a detective's "clearly neutral, nonaccusatory" questions "in furtherance of proper preliminary investigation"). "The focus in ascertaining whether particular police conduct amounts to interrogation . . . is not on the form of the words used, but the intent of the police officers and the perceptions of the suspect." *State v. Finehout*, 136 Ariz. 226, 230 (1983).

¶10        Garfio argues his "yes" response to Officer Hurley's question about who owned the backpack should have been suppressed because it was elicited while he was in custody and before he was advised of his right to remain silent. He argues the court abused its discretion in finding the question was simply attendant to a typical arrest. We reject his argument for two independent reasons.

¶11        First, the evidence reflects that Officer Hurley asked the question incident to Garfio's arrest.  Generally, police may ask a person in custody about the ownership of property to ensure that the property is safeguarded without conducting an interrogation for purposes of *Miranda*. *See, e.g.*, *United States v. Conley*, 156 F.3d 78, 84 (1st Cir. 1998) (describing a question about ownership of money found in a defendant's wallet as an "informational inquiry incident to the arrest, as opposed to a query designed to induce an inculpatory remark"); *United States v. Regilio*, 669 F.2d 1169, 1177 (7th Cir. 1981) (noting that "inventorying of a suspect's property" is "not interrogation"); *United States v. La Monica*, 472 F.2d 580, 581 (9th Cir. 1972) (finding no *Miranda* violation because the "officer who asked [defendant] about the receipt was not seeking evidence but was trying to identify and inventory [defendant's] personal effects"); *see also Miranda*, 384 U.S. at 477 (excluding general on-the-scene questioning from the definition of custodial interrogation); *Innis*, 466 U.S. at 301. Hurley testified that he was arresting Garfio on an unrelated warrant, only asked about the backpack to make sure Garfio left nothing behind, was unaware there would be illegal drugs in the backpack, and first learned about the drugs when conducting a routine search of Garfio's possessions. We defer

to the superior court's decision to credit Hurley's testimony about these facts. *See Rosengren*, 199 Ariz. at 116, ¶ 9.

¶12        Garfio also argues Officer Hurley's question was intended to elicit incriminating information. He bases this claim on Hurley's prior training with drug investigations, asserting that he knew the purpose of the stop was to find illegal drugs. However, Hurley testified his question regarding ownership of the backpack was unrelated to his specialized narcotics training. He explained that at the time he asked the question he had no knowledge that there were drugs in the car he had yet to find. The record does not indicate Hurley intended to elicit an incriminating response when he posed the question. Hurley asked the question before he even knew about the drugs, not to ascertain who was transporting the drugs. *See Oregon v. Vondehn*, 236 P.3d 691, 707 n.2 (2010) (Linder, J., concurring) (noting that because of officers need to "ascertain the owner of property in order to ask for consent to search," questions "to determine the identity of the owner may potentially qualify as the kind of routine questioning normally attendant to" arrest).  Thus, the question was the type normally attendant to arrest.

¶13        Second, even if we were to assume Garfio's affirmative response to Officer Hurley's question was in fact the result of a custodial interrogation in violation of *Miranda*, admission of the statement would amount to a harmless error because it amounts to cumulative evidence. *See State v. Williams*, 133 Ariz. 220, 226 (1982).  Garfio acknowledged his ownership of the backpack after he received his *Miranda* rights, prior to invocation of his right to remain silent. After receiving *Miranda* warnings, he nodded his head in agreement when told drugs were found in the backpack. Even without Garfio's pre-*Miranda* statement, the jury would have received evidence that Garfio was in the backseat with the backpack between his legs, the driver's response that the backpack was not his, and Garfio's post-*Miranda* acknowledgment that there were drugs found in the backpack. We find no reversible error.

## CONCLUSION

¶14      For the foregoing reasons, we affirm the superior court's denial of Garfio's motion to suppress and his conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA