990 P.2d 23

**STATE of Arizona, Appellant,**

v.

**Jesus Carlos SOTO, Appellee.**

**No. 1 CA–CR 97–0988.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 28, 1999.

As Amended Jan. 29, 1999.

Review Denied Nov. 30, 1999.

Richard M. Romley, Maricopa County Attorney by Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Dean W. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 The State appeals from the trial court's order granting the motion of Jesus Carlos Soto ("defendant") to suppress approximately 100 pounds of marijuana. For the following reasons, we reverse and remand this case for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Arizona Department of Public Safety ("DPS") officers learned from a confidential informant that an Hispanic male had stored 35 pounds of marijuana at a given residence. The officers set up surveillance of the residence, during which surveillance Officer Frank Valenzuela left to obtain a search warrant. While Valenzuela was gone, Sgt. Larry Lizarraga, realizing that there were people going in and out of the residence and observing that a vehicle had been parked in front of the house, ordered the officers to "secure the residence." This procedure meant entering the premises to "make sure that there is no officer safety issue and just go inside and make sure, find out if there is [sic] any occupants."

¶ 3 As the officers entered the residence, an individual later determined to be the defendant jumped over the back fence. He was caught, handcuffed, brought back to the house, advised of his rights and informed that the officers believed that there was marijuana at the residence. The defendant admitted that there were 140 pounds of marijuana, but he denied its ownership, although he conceded that, if he sold it, he would make $2000.

¶ 4 Also as a matter of procedure, one officer went into the back yard of the house, where he immediately smelled a strong odor of marijuana coming from an unlocked shed behind the house. Inside the shed were closed boxes. The officer looked inside the one box not sealed with duct tape and found marijuana.

¶ 5 After the search warrant issued, officers completed the search and seized five boxes of marijuana. The officers also found cocaine, marijuana cigarettes and drug paraphernalia. Although the warrant was signed after the initial entry onto the premises, it is undisputed that the warrant was not based upon information gained during the entry of the house and shed.

¶ 6 The defendant was indicted for three drug-related felonies. In Count II, he was charged with knowingly possessing marijuana for sale in an amount greater than four pounds. He moved to suppress the marijuana as the product of an illegal search. After an evidentiary hearing, the trial court granted the motion. Count II was dismissed without prejudice, and the state appealed.

### DISCUSSION

¶ 7 Generally we review the trial court's ruling on a motion to suppress evidence for clear and manifest error. *State v. Rodriguez*, 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996); *State v. Stanley*, 167 Ariz. 519, 523, 809 P.2d 944, 948, *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991). However, mixed questions of law and fact which implicate constitutional rights are reviewed *de novo*. *State v. Hackman*, 189 Ariz. 505, 508–09, 943 P.2d 865, 868–69 (App. 1997).

¶ 8 Law-enforcement officers may not enter a home without a warrant unless there are exigent circumstances, *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), defined as a response to an emergency, a "hot" pursuit, the probability of the destruction of evidence, the possibility of violence, the knowledge that a suspect is fleeing or attempting to flee, or a substantial risk of harm to the persons involved or to the law-enforcement process if officers must wait for a warrant. *State v. Gissendaner,* 177 Ariz. 81, 83, 865 P.2d 125, 127 (App.1994). In this case, there were no exigent circumstances to justify a warrantless entry. Without such conditions or a warrant, the sweep was a per se violation of the Arizona Constitution. *State v. Bolt,* 142 Ariz. 260, 265, 689 P.2d 519, 524 (1984). The focus then becomes whether evidence observed during the sweep nonetheless is admissible.

¶ 9 The exclusionary rule prohibits the introduction of illegally-obtained evidence but with the development of the exclusionary rule came the independent-source doctrine. *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1987); *Hackman,* 189 Ariz. at 508, 943 P.2d at 868. This doctrine always has applied to "that particular category of evidence acquired by an untainted search *which is identical to the evidence unlawfully acquired." Murray,* 487 U.S. at 538, 108 S.Ct. 2529 (emphasis original).

¶ 10 The search warrant which allowed the officers to seize the marijuana was not tainted by any information learned during the illegal entry. In other words, the warrant was not obtained "through an 'exploitation of that illegality,' but, rather, from an independent source, thereby rendering it legitimately acquired." *Hackman,* 189 Ariz. at 508, 943 P.2d at 868 (quoting *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Thus, the evidence was the product of a source independent of the prohibited entry, and it should have been admitted. Otherwise, "[i]nvoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." *Murray,* 487 U.S. at 541, 108 S.Ct. 2529 (emphasis original) (citing *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). This is not the purpose of the exclusionary rule. In *Segura v. United States,* 468 U.S. 796, 799, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Court specifically held that evidence need not be suppressed if the warrant and the information on which it was based are unrelated to the illegality and therefore an independent source for the evidence.

¶ 11 Arizona law is to the same effect. When law-enforcement officers make an initial warrantless entry, " 'products of a subsequent search [pursuant to a warrant] may be admitted at trial, provided the warrant was based on information legally obtained.' " *State v. Gulbrandson,* 184 Ariz. 46, 58, 906 P.2d 579, 591 (1995), *cert. denied,* 518 U.S. 1022, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996) (quoting *State v. Martin,* 139 Ariz. 466, 477, 679 P.2d 489, 500 (1984)); *see also State v. Weinstein,* 190 Ariz. 306, 312, 947 P.2d 880, 886 (App.1997).

¶ 12 The trial court based its contrary decision upon *State v. Ault,* 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). Invoking the Arizona Constitution's special protection of the privacy of the home, the court declined to accept an inevitable-discovery exception to the warrant requirement. However, its reliance upon *Ault* and its analysis of this case in the context of the inevitable-discovery doctrine were erroneous.

¶ 13 In *Ault,* the supreme court "recognize[d] the inevitable discovery doctrine in Arizona." *Id.* at 465, 724 P.2d at 551. Quoting *State v. Lamb,* 116 Ariz. 134, 138, 568 P.2d 1032, 1036 (1977), it said: "[E]vidence obtained as a result of an unlawful search need not be suppressed where, in the normal course of the police investigation and absent illicit conduct, the evidence would have been discovered anyway." *Id.* However, it declined to apply this rationale to the situation of *Ault* in which an illegal search of the defendant's home directly yielded the evidence at issue, a pair of shoes. *Id.* "We choose not to allow the inevitable discovery doctrine to reach into homes of citizens in the factual situation before us." *Id.* In its supplemental opinion, the court made clear that

**432**

its holding was limited in scope, and it expressly refused to "express any opinion on whether the plain view doctrine or independent source doctrine can be invoked to introduce evidence directly or primarily obtained in a[n unconstitutional] search or seizure of a home...." *Id.* at 470 n. 1, 724 P.2d at 556 n. 1.

 ¶ 14 The warrant exceptions of inevitable discovery and independent source relate because they serve to purge the taint of impermissible law-enforcement activity, causally disconnecting the acquisition of the evidence from the illegality. *See, e.g., Murray,* 487 U.S. at 541, 108 S.Ct. 2529; *Segura,* 468 U.S. at 799, 104 S.Ct. 3380; *Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. 407; *see also Hackman,* 189 Ariz. at 508–10, 943 P.2d at 868–70. However, each is independent in its applicability. In this case, there is no need to consider the inevitable-discovery doctrine. The marijuana was not seized as a result of the illegal entry into the home; officers learned of it from an independent source, upon whose untainted information a valid warrant was obtained. The evidence, therefore, was legitimately seized and need not be suppressed.

*CONCLUSION*

¶ 15 The order of the trial court is reversed, and this matter is remanded for further proceedings.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.