3 P.3d 956

**STATE of Arizona, Appellee,**

v.

**William Lee DeCAMP, Appellant.**

**No. 1 CA–CR 98–0384.**

Court of Appeals of Arizona,
Division 1, Department C.

May 27, 1999.

Review Denied Feb. 8, 2000.

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section Randall M. Howe, Assistant Attorney General, Phoenix, for Appellee.

Robert W. Doyle, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

¶1 William Lee DeCamp ("defendant") appeals his convictions and sentences for possession of marijuana for sale, possession of dangerous drugs for sale and misconduct involving weapons. He contends that the trial court erred in denying his motion to suppress evidence seized from his room pursuant to a search warrant. He also argues that the court erred in permitting his only witness, his mother, to be impeached with a felony conviction undisclosed by the state until immediately before she testified.

## *FACTS* [1] *AND PROCEDURAL HISTORY*

▪ ¶2 The Phoenix Police Department received an anonymous complaint concerning weapons and narcotics-related activity at a residence leased to Dorothy Beard, the defendant's mother. Thereafter, Detective Darren Fredrickson and another officer went to the house. When they arrived, they saw the defendant's brother, Arthur DeCamp, walking away from the residence. The officers knew that Arthur was the subject of two outstanding warrants so they stopped him in front of the house. With him, they then walked around to the back yard of the house, where they encountered the defendant and arrested Arthur on the warrants. Both Arthur and the defendant refused the officers' request for permission to search the residence.

¶3 Beard arrived at the house soon after Arthur was arrested. She subsequently consented to a search of the residence with the exception of the defendant's room. While

---

1. The facts presented are those derived from the hearing on the defendant's motion to suppress. *State v. Spears,* 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). We view the evidence and draw all reasonable inferences in favor of upholding the trial court's factual findings. *State v. Hackman,* 189 Ariz. 505, 508–09, 943 P.2d 865, 868–69 (App.1997).

the officers honored this request when they conducted the search to which Beard agreed, they had previously conducted a "protective sweep" of the house. During the sweep, one officer or another had entered every room in the house, including that of the defendant.[2]

¶ 4    While in the kitchen of the residence to use the telephone with Beard's consent, Detective Fredrickson could see a bong in the defendant's room. The detective asked the defendant to get the bong, and the defendant complied. However, he retrieved a bong different from the one seen by Detective Fredrickson. When Detective Fredrickson told the defendant that he had been referring to a different bong, the defendant returned to his room to get another one. While the detective waited, he shined his flashlight through the window of the defendant's room and looked through the partially-open door to the room, perceiving a "gram scale" and several small, empty plastic bags. By then, the defendant had obtained the bong to which Detective Fredrickson had been referring.

¶ 5    Subsequently, Detective Fredrickson prepared an affidavit in support of a search warrant for the house, including the defendant's room. A warrant was obtained, and the officers conducted a thorough search. The defendant then was arrested and, later, indicted.

¶ 6    In response to the defendant's motion to suppress, the trial court conducted a hearing and concluded that the police officers did not have sufficient justification to conduct the protective sweep. Notwithstanding, it denied the defendant's motion and admitted the evidence, reasoning that the items supplying the probable cause for the warrant had been in the detective's plain view.

¶ 7    The defendant was convicted as charged with one count of possession of dangerous drugs for sale, a class 2 felony, one count of possession of marijuana for sale, a class 4 felony, and one count of misconduct involving weapons, a class 4 felony. He was sentenced to concurrent mitigated terms of four years for count one, and one and one-half years each on counts two and three, with credit given for thirty days served prior to sentencing. The trial court also imposed a fine and ordered the defendant to perform a period of community supervision upon completion of his incarceration.

## DISCUSSION

### A.   Independent-source and Plain-view Doctrines

¶ 8    The defendant asserts that the trial court should have suppressed all of the evidence found during the search. He argues that, although the search was conducted pursuant to a warrant, the warrant was tainted by information obtained during the unlawful protective sweep. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Hackman*, 189 Ariz. 505, 508, 943 P.2d 865, 868 (App.1997). We disagree.

¶ 9    The trial court's ruling on a motion to suppress evidence generally is reviewed for "clear and manifest error." *State v. Soto*, 287 Ariz. Adv. Rep. 58, 59 ¶ 7, 195 Ariz. 429, 430 ¶ 7, 990 P.2d 23, 24 ¶ 7 (App. 1999). However, when it involves questions of law as does this one, our review is de novo. *Id.; Hackman*, 189 Ariz. at 508, 943 P.2d at 868. We find that, accepting the illegality of the sweep, a point the state disputes, the evidence was properly admitted based on a source independent of the improper search: the plain view of the items upon the detective's lawful presence in the house. *See Soto*, 287 Ariz. Adv. Rep. at 59–60 ¶¶ 9–11, 195 Ariz. at 431 ¶¶ 9–11, 990 P.2d at 25 ¶¶ 9–11; *Hackman*, 189 Ariz. at 508–09, 943 P.2d at 868–69.

¶ 10    "The exclusionary rule requires the suppression at trial of evidence gained directly or indirectly as a result of a government violation of the Fourth, Fifth or Sixth Amendments" to the United States Constitution. *Hackman*, 189 Ariz. at 508, 943 P.2d at

---

**2.**   The findings of fact reflect that Detective Fredrickson did not observe any contraband during the protective sweep. This is directly contradicted, however, by the detective's testimony at the suppression hearing that he saw a bong in the defendant's room during the sweep, a fact the state concedes on appeal. The erroneous finding does not, however, affect our analysis.

868, citing *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *see Soto,* 287 Ariz. Adv. Rep. at 59–60 ¶¶ 9–11, 195 Ariz. at 431 ¶¶ 9–11, 990 P.2d at 25 ¶¶ 9–11. An "exception" to the application of this rule exists when the evidence is obtained from an independent source. *Id.*

¶ 11 The record supports the trial court's finding that Detective Fredrickson, while lawfully in the kitchen, could plainly view the bong in the defendant's room. The detective could clearly see the bong again during the search of the house made with Beard's consent. Because Detective Fredrickson was inside the residence with Beard's permission on both occasions, any evidence in plain view was not obtained from an "exploitation" of the illegal sweep. It was procured instead as a result of the legitimate presence of Detective Fredrickson, thereby causing the evidence to be derived from a source independent of the unlawful police activity.

¶ 12 This case is not unlike *Soto.* In *Soto,* as here, law-enforcement officers performed an unlawful protective sweep of a residence. However, the search warrant they later executed was based on information not obtained as a result of the illegal activity. This meant that "the evidence was the product of a source independent of the prohibited entry" and admissible. 287 Ariz. Adv. Rep. at 59 ¶ 10, 195 Ariz. at 431 ¶ 10, 990 P.2d at 23 ¶ 10.

¶ 13 While in *Soto* the search warrant provided the independent source for the officers' presence in the house and their acquisition of the evidence, in this case, the officers' appearance was authorized by Beard's consent. What follows is that, if the evidence found by Detective Fredrickson was in plain view, as we now discuss, it was observed as a result of a source independent of the illegal protective sweep, i.e., the detective's lawful presence.

¶ 14 The Supreme Court said in *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), that, as long as the law-enforcement officers are authorized to be where they are, they may seize any item in plain view if its evidentiary value is at once apparent. *See State v. Apelt,* 176 Ariz. 349,

362, 861 P.2d 634, 647 (1993), *cert. denied,* 513 U.S. 834, 115 S.Ct. 113, 130 L.Ed.2d 59 (1994). In *Horton* and in *Soto,* the official presence was due to a warrant; in this case, it was by consent. In those cases as in this one, the officers were where they were authorized to be.

¶ 15 The defendant asserts, though, that the plain-view doctrine does not apply. He cites *State v. Ault,* 150 Ariz. 459, 464, 724 P.2d 545, 550 (1986), as requiring three elements: (1) that the officer have a prior justification to be in the position to see the evidence, (2) that the discovery of the evidence be inadvertent and (3) that its evidentiary value be immediately apparent. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)(plurality opinion), *overruled in part by Horton,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. The first factor is resolved by Beard's consent. The third factor is not at issue. The defendant's complaint addresses the second element.

¶ 16 In general, "the exclusionary rule to be applied as a matter of state law is no broader than the federal rule," *Hackman,* 189 Ariz. at 508 n. 3, 943 P.2d at 868 n. 3., quoting *State v. Bolt,* 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984), and the federal rule no longer requires "inadvertence." *Horton,* 496 U.S. at 130, 110 S.Ct. 2301. In *Horton,* the Supreme Court explained that the requirement of inadvertence stemmed from the idea that, if the law-enforcement officers know that an item exists, it is no inconvenience to require a warrant. *Id.* at 138, 110 S.Ct. 2301, citing *Coolidge,* 403 U.S. at 468–69, 91 S.Ct. 2022. Moreover, if they know that an item exists and fail to include it in the warrant, they have violated the constitutional requirement that a warrant "particularly describ[e]" the items to be seized. *Id.,* citing *Coolidge,* 403 U.S. at 469–71, 91 S.Ct. 2022. The Court found that this reasoning was flawed, however, explaining:

First, evenhanded law enforcement is best achieved by the application of objective standards of conduct.... [I]f [an officer] has a valid warrant to search for one item and merely a suspicion concerning the sec-

ond, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.

\* \* \*

Second, the suggestion that the inadvertence requirement is necessary to prevent the police from conducting general searches, or from converting specific warrants into general warrants, is not persuasive because that interest is already served by the requirements that no warrant issue unless it "particularly describ[es] the place to be searched and the persons or things to be seized," and that a warrantless search be circumscribed by the exigencies which justify its initiation.

*Id.* at 138–40, 110 S.Ct. 2301 (internal citations omitted).

¶ 17   Although Arizona appellate courts have recognized a requirement of inadvertence, *see, e.g., Ault,* 150 Ariz. at 464, 724 P.2d at 550; *State v. Kosman,* 181 Ariz. 487, 490, 892 P.2d 207, 210 (App.1995); *State v. Superior Court,* 136 Ariz. 78, 81–82, 664 P.2d 228, 231–32 (App.1983), they have done so relying on cases decided prior to *Horton.* Since *Horton,* the appellate courts have considered the element of inadvertence but without specifically recognizing the impact of *Horton.*

¶ 18   In *Apelt,* decided three years after *Horton,* the supreme court considered the validity of a seizure in the context of the plain-view doctrine.   176 Ariz. 349, 861 P.2d 634.   Although the court did not expressly abandon the inadvertence requirement, it did so implicitly by stating that, "[a]s long as the warrant authorized [the officers] to be where they were, the police could seize any items that were in plain view, the evidentiary value of which was immediately apparent." *Id.* at 362, 861 P.2d at 647, citing *Horton,* 496 U.S. at 135–36, 110 S.Ct. 2301.   Notably absent is any reference to a requirement of inadvertence.

¶ 19   In two cases decided after *Horton, Kosman,* 181 Ariz. at 490, 892 P.2d at 210, and *Mazen v. Seidel,* 189 Ariz. 195, 197, 940 P.2d 923, 925 (1997), the mention of inadvertence itself seems to have been inadvertent. In both cases, the court in dicta cited *State v. Kelly,* 130 Ariz. 375, 378, 636 P.2d 153, 156 (App.1981), a case decided before *Horton,* for that proposition.   In neither case, however, did the court discuss, let alone rely on, this element to decide the case.

¶ 20   In light of *Horton* and consistent with *Apelt,* inadvertence is no longer an element of the plain-view analysis.   Thus, it did not matter whether Detective Fredrickson's plain view of the bong was inadvertent.

*B.   Tardy Disclosure of Conviction to Impeach Defense Witness*

¶ 21   The defendant's only witness at trial was his mother, Dorothy Beard.   On the day she testified, the state disclosed its intention to impeach her with a felony conviction.   The defendant objected to the untimely disclosure, and he now asserts that the trial court abused its discretion in allowing the state to use the conviction to impeach Beard.

¶ 22   The decision whether to impose a sanction for a violation of the discovery rules is within the trial court's discretion, and it will not be disturbed unless the defendant can show prejudice.   *State v. Lawrence,* 123 Ariz. 301, 303, 599 P.2d 754, 756 (1979).   Moreover, the court has broad discretion to determine the nature of any sanction.   *State v. Starks,* 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979); *see* Ariz. R.Crim. P. 15.7 ("the court may impose any sanction which it finds just under the circumstances … ").

¶ 23   Rather than precluding the evidence entirely, the trial court allowed the state to cross-examine Beard regarding whether she had a prior conviction but without indicating the nature of the felony.   This was an acceptable resolution.   More importantly, the defendant has shown no prejudice.

*CONCLUSION*

¶ 24   The defendant's convictions and sentences are affirmed.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and REBECCA WHITE BERCH, Judge.