NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

AMAR ABDULA WRIGHT, *Appellant*.

No. 1 CA-CR 15-0419
FILED 10-18-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-123951-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill[1] delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

**G E M M I L L**, Judge:

**¶1**　　　　Amar Abdula Wright appeals his convictions and sentences for one count of possession or use of dangerous drugs (methamphetamine) and one count of possession of drug paraphernalia.  Wright argues the trial court erred in denying his motion to suppress, and he contends the court abused its discretion by failing to adequately inquire into two *propria persona* ("pro per") pre-trial motions.  For the following reasons, we affirm.

**BACKGROUND**

**¶2**　　　　We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdicts.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

**¶3**　　　　While on late-night patrol in an area known for criminal activity, Officer Baynes observed Wright riding a bicycle that did not have a front lamp as required by Arizona law.  *See* Ariz. Rev. Stat. ("A.R.S.") § 28-817(A).  Baynes stopped Wright, advised him of the observed violation, and asked where the head lamp was located.  Holding up a black nylon satchel, Wright responded, "[It's] in my bag."  Baynes then asked Wright for identification, and Wright handed Baynes the bag, saying his identification and wallet were also inside.  Baynes unzipped the bag's main compartment and "[a]lmost immediately . . . saw a . . . glass methamphetamine pipe."  The pipe had "black singe marks" and a white encrusted interior, indicating it had been used.

**¶4**　　　　Baynes arrested Wright and advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Wright admitted a drug test would indicate the presence of methamphetamine in his system.  Baynes

_____

[1]　　　The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

proceeded to search Wright. He found, in Wright's waistband, a plastic baggie containing a white crystalline substance that was subsequently determined to be 48.4 milligrams of methamphetamine.

¶5         The State charged Wright with one count each of possession or use of dangerous drugs (methamphetamine), a class 4 felony, and possession of drug paraphernalia, a class 6 felony. Wright moved to suppress the evidence obtained from his bag, arguing Baynes's warrantless search violated the Fourth Amendment to the United States Constitution and Article 2, Section 8, of the Arizona Constitution. The court conducted an evidentiary hearing on the motion and denied it.

¶6         The jury found Wright guilty on both counts, and the court imposed concurrent prison terms, the longest of which was 10 years for the possession or use of dangerous drugs conviction. Wright timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## ANALYSIS

### I.    Motion to Suppress

¶7         Wright argues the court erred in denying his motion to suppress because he did not consent to a search of the bag he was carrying at the time of the traffic stop.[2] Based on his alleged lack of consent, Wright contends the warrantless search violated his rights under the Fourth Amendment.[3] We disagree.

¶8         In reviewing the denial of a motion to suppress, we consider only the evidence submitted at the suppression hearing and view the facts in the light most favorable to upholding the trial court's ruling. *State v. Blackmore*, 186 Ariz. 630, 631 (1996); *State v. Box*, 205 Ariz. 492, 493, ¶ 2 (App. 2003). Although we defer to the trial court's factual determinations, we review de novo its ultimate legal conclusion. *Box*, 205 Ariz. at 495, ¶ 7. A trial court's ruling on a motion to suppress will not be reversed on appeal

---

[2]       In superior court, Defendant also challenged the legality of the traffic stop. He does not reassert that challenge on appeal.

[3]       Defendant does not argue on appeal that the search violated his privacy rights under the Arizona Constitution. We therefore rely on Fourth Amendment jurisprudence in reviewing the trial court's suppression ruling.

absent "clear and manifest error," the equivalent of an abuse of discretion. *State v. Newell*, 212 Ariz. 389, 396 & n.6, ¶ 22 (2006).

¶9        The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"). Evidence obtained as a result of an unreasonable search is generally inadmissible in a criminal trial. *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016). A warrantless search is *per se* unreasonable unless a well-established exception applies to the warrant requirement. *Id.* One such exception is a search conducted pursuant to voluntary consent. *Id.* at ¶ 11.

¶10        "The voluntariness of a defendant's consent to search is a question of fact determined from the totality of circumstances." *State v. Paredes*, 167 Ariz. 609, 610 (App. 1991). It is the State's burden to establish by a preponderance of evidence that a defendant's consent to search was freely and intelligently given. *Valenzuela*, 239 Ariz. at ¶ 11; *see also*, Ariz. R. Crim. P. 16.2(b).

¶11        The State satisfied its burden of proving Wright voluntarily consented to the search of his bag. Baynes testified at the suppression hearing that, after he asked for Wright's identification, Wright responded that it was in his bag. Baynes also testified that Wright then handed him the bag without Baynes requesting he do so.

¶12        Wright contends that this statement regarding the location of his identification was at best "ambiguous" because he did not expressly assent to a search of his bag. But express consent is not always needed; conduct alone can be sufficient to establish voluntariness in the Fourth Amendment context. *See State v. Tucker*, 118 Ariz. 76, 79 (1978) ("[T]he constitutional protection against unreasonable searches demands a waiver by unequivocal words *or* conduct expressing consent." (emphasis added)). Wright's words as well as his conduct are determinative. According to Baynes, he asked for Wright's identification and Wright said it was in his bag. Baynes then asked to see the identification and Wright took the bag and said "my ID and my wallet are in this bag" and handed the bag to Baynes. This testimony supports the trial court's conclusion that Wright voluntarily consented to the officer searching the bag to find the requested identification. The voluntariness of Wright's consent is especially apparent because Baynes did not ask Wright to give him the bag; Wright did so of his own accord. Moreover, there is no evidence indicating Baynes induced Wright's consent through force, threats, promises, or by asserting his legal

authority to conduct the search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973) ("[T]he Fourth . . . Amendment[] require[s] that a consent not be coerced, by explicit or implicit means, by implied threat or covert force."). And, Baynes testified that when he opened the bag, "the first thing [he] saw was the meth pipe." *See State v. DeCamp*, 197 Ariz. 36, 39, ¶ 14 (App. 1999) ("[A]s long as the law-enforcement officers are authorized to be where they are, they may seize any item in plain view if its evidentiary value is at once apparent.")  On this record, therefore, the trial court did not err in determining that Wright voluntarily consented to the search.

¶13        Wright argues he may have had an alternative motive for handing over the bag—in other words, he could have given Baynes the bag for a purpose other than to allow him to look for Wright's identification. But the record of the suppression hearing contains no evidence to support Wright's speculative argument; rather, the evidence supports the trial court's conclusion that Wright intended Baynes to look in the bag to obtain his personal information.

¶14        Finally, Wright, without citation to authority, contends the trial court impermissibly shifted the burden to him to prove his consent was equivocal.  Specifically, Wright points to a comment the court made when ruling on the motion to suppress: "[B]y handing the bag over -- and I have no testimony to indicate any other thing happened -- I do believe that that's sufficient consent."[4]  But this comment does not support Wright's contention that the court improperly shifted the burden of proof.  Instead, the comment reflects that the court permissibly weighed the evidence at the suppression hearing and determined it supported a finding that Wright voluntarily consented to a search of his bag.

¶15        Because the State satisfied its burden of proving, by a preponderance of evidence, that Wright's consent was voluntary, the trial court did not err by denying Wright's motion to suppress.

---

[4]        Defendant also relies on other comments made by the court.  Those comments, however, were made when the court denied Wright's challenge to the *basis for the traffic stop*—a ruling he does not challenge on appeal—not to explain the court's determination that he voluntarily consented to the search of his bag.  We conclude, therefore, that the cited portions of the record do not support Wright's argument.

## II. Pro Per Motions

¶16 Wright filed two pro per motions before trial. He argues the court abused its discretion by inadequately "inquir[ing] into" the motions.

¶17 The first motion was a request for a rehearing on Wright's motion to suppress. As the basis for his motion, Wright asserted that his "family and friends had located and contacted the witness that was at the scene of the unlawful stop and illegal search, and the witness is willing and able to testify. This new evidence would or could change the ruling of the evidentiary hearing[.]" The court, without explanation, denied the motion in a minute entry ruling. Wright was represented by counsel when he filed his pro per motion for rehearing.

¶18 Wright contends the court's failure to explain, on the record, the rationale for its ruling impedes appellate review and therefore violates his right to appeal under Article 2, Section 24, of the Arizona Constitution. *See* Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have the right to. . . appeal in all cases[.]").

¶19 Wright's argument fails because a trial court is not required to hear or rule upon such motions, let alone provide a rationale for its ruling. *State v. Carlson*, 237 Ariz. 381, 398, ¶ 63 (2015). Accordingly, the court did not err by failing to explain why it denied Wright's pro per motion for rehearing. *Id.*

¶20 The second pro per motion, filed more than two months before trial commenced, was a request to change counsel. In this motion, Wright asserted he had provided his counsel with information regarding a material witness, but his counsel failed to follow up. Wright also made the following accusations:

> [C]ounsel fails to file motions in a timely manor, [sic] fails to strategize with me. Only had one face to face, whole time [counsel] has been appointed on my case. And she told me we gonna lose in trial. And gave me bad information on my civil case against police officer in my criminal case which she represents me on now."

¶21 The record contains no explicit ruling on this motion. But when Wright—on the first day of trial—requested a ruling, defense counsel and the prosecutor agreed that Wright had withdrawn the motion at a hearing before the matter was assigned to the trial judge. As a result, the trial court determined Wright was renewing the motion to change counsel,

and Wright addressed the court in support of the motion. The court denied the renewed motion as untimely.

¶22      Wright argues the court improperly denied his motion and should have addressed the merits of his request for new counsel. Wright refers to his counsel's failure to pursue a "material witness" and asserts he "raised a colorable claim of conflict with his attorney which went beyond mere tactical or strategic disagreements, or a general lack of communication[.]"

¶23      We review a superior court's decision to deny a request for new counsel for an abuse of discretion. *State v. Cromwell*, 211 Ariz. 181, 186, ¶ 27 (2005). Although a criminal defendant has the right to be represented by competent counsel, he is entitled neither to counsel of his choice nor to a meaningful relationship with his attorney. *Id.* at ¶ 28. Ordinarily, only the presence of an "irreconcilable conflict or a completely fractured relationship" between trial counsel and an accused will require the appointment of new counsel. *Id.* at ¶ 29. Personality conflicts and "disagreements over defense strategies do not constitute an irreconcilable conflict." *Id.* at 186–87, ¶¶ 29–30.

¶24      When Wright renewed his motion at trial, he explained:

[I]t seemed like we didn't strategize to this point, no face to face. I haven't talked to her. I don't know, I'm going in blind and I feel that my life is on the line, and I don't know nothing up until now. So if I were to be sentenced right now, it would be probably unfair for me due to my counsel.

I never talked to her, no face to face, a couple phone calls, a conversation, maybe listening to a recording, very harsh; and basically, she told me I was guilty before I got here today, so I was already deemed guilty. So I feel like if I'm deemed guilty before I even see a jury, it's an issue.

¶25      Defense counsel responded:

So, Judge, we had the evidentiary hearing in front of you, and not a lot changed since then, so I didn't meet with my client in the jail since the evidentiary hearing. However, my investigator has, and my investigator has replayed the tape, the tape for him that he wanted to hear, and he's met with him several times and I've conversed with him.

The evidence hasn't changed, so there wasn't, I didn't feel, a need to go see him anymore.

Let's see. I did give him my advice as to the outcome. He's facing ten years in prison. That's a lot of time, and, you know, I'd hate to see him get that, so, you know, I did give him my true assessment of what I thought was going to happen.

¶26 Counsel's comments that the evidence had not changed since the suppression hearing indicate she and Wright disagreed as to the significance of the witness located by Wright's family and friends. This disagreement does not rise to the level of an "irreconcilable conflict or a completely fractured relationship" between Wright and counsel. *See Cromwell*, 211 Ariz. at 186, ¶ 29. Rather, it indicates a disagreement over trial strategy and did not require appointment of new counsel to ensure Wright received a fair trial. At most, Defendant's complaint raises a potential ineffective assistance of counsel claim, which can only be pursued in a petition for post-conviction relief under Ariz. R. Crim. P. 32. *See State v. Sprietz*, 202 Ariz. 1, 2, ¶ 5 (2002).

¶27 Further, Wright's own statements indicate he and counsel, or counsel's investigator, in fact discussed Wright's case. The fact that counsel advised Wright of her negative evaluation of his prospects at trial did not require an appointment of new counsel. The substance of Wright's written motion, as well as his verbal renewal of that motion, was therefore inadequate to merit the appointment of substitute counsel. As a result, we need not address the propriety of the trial court's denial of the renewed motion on timeliness grounds. *See State v. Perez*, 141 Ariz. 459, 464 (1984) (noting we will uphold a trial court's ruling if it is legally correct for any reason).

**CONCLUSION**

¶28 Wright's convictions and sentences are affirmed.

