NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GREGERY KEETEN, *Appellant.*

No. 1 CA-CR 18-0525
FILED 9-24-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-149044-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge David D. Weinzweig joined.

---

J O H N S E N, Judge:

¶1 Gregery Keeten appeals his conviction and sentence for misconduct involving weapons. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mesa police detectives contacted Keeten during an undercover investigation into prostitution and sex trafficking.[1] They found Keeten in the driver's seat of his parked car, a handgun beside him. Keeten was on supervised probation for an armed robbery conviction at the time.

¶3 A grand jury indicted Keeten on one count of misconduct involving weapons, a Class 4 felony. After a five-day trial, the jury found him guilty as charged, and the superior court sentenced him to a term of 10 years' imprisonment. Keeten timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019), 13-4031 (2019), and -4033(A)(1) (2019).[2]

## DISCUSSION

### A.    Motion to Suppress.

¶4 Before trial, Keeten moved to suppress evidence of the firearm, arguing the detectives lacked reasonable suspicion to conduct an investigatory stop when they detained him in his parked car. Keeten argues on appeal that the superior court erred by denying his motion.

---

[1] We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

[2] Absent material revision after the relevant date, we cite the current version of rules and statutes.

¶5            The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. Const. amend. IV.  Evidence obtained by a search and seizure that violates the Fourth Amendment is generally inadmissible in a criminal trial.  *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961); *State v. Valenzuela*, 239 Ariz. 299, 302, ¶ 10 (2016).  We review the denial of a motion to suppress for an abuse of discretion.  *State v. Mitchell*, 234 Ariz. 410, 413, ¶ 11 (App. 2014).  We review *de novo*, however, the superior court's legal determination whether a search "complied with the dictates of the Fourth Amendment."  *State v. Valle*, 196 Ariz. 324, 326, ¶ 6 (App. 2000).  In doing so, we will uphold the superior court's ruling if it is legally correct for any reason.  *State v. Huez*, 240 Ariz. 406, 412, ¶ 19 (App. 2016).

¶6            A police officer may briefly detain a person for investigative purposes if the officer has reasonable, articulable suspicion based upon the totality of the circumstances that the suspect is involved or about to be involved in criminal activity.  *Terry v. Ohio*, 392 U.S. 1, 21, 30 (1968); *State v. Teagle*, 217 Ariz. 17, 22-23, ¶ 20 (App. 2007).  "Although 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory detention."  *Teagle*, 217 Ariz. at 23, ¶ 25.  In applying this standard, "we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions."  *Id*. at 24, ¶ 26.

¶7            At an evidentiary hearing on the motion to suppress, the State presented evidence that undercover detectives responded to a sexually explicit advertisement in the "Female Escorts" section of the website "backpage.com," which commonly ran advertisements for prostitution.  Through text messages, the detectives negotiated a price for some services and arranged to meet two females the next afternoon.  At the designated time, detectives observed Keeten drive his car through the parking lot of the apartment complex at which they had agreed to meet.

¶8            Keeten parked the car, and two females got out and walked toward the apartment.  Detectives intercepted them before they reached the apartment.  Meanwhile, other detectives had obtained information that the parked car was registered to Keeten and that he was on supervised probation following an armed robbery conviction.  They approached Keeten's car and found him in the driver's seat next to the handgun.

¶9            In response to the motion to suppress, the State argued that the officers' prior communications with the contact from the advertisement, along with their training and experience, caused them to reasonably suspect

that the driver of the car was transporting the two females to the apartment complex for prostitution. At the hearing, detectives recounted their exchange of text messages with the contact listed in the "backpage.com" advertisement. In the texts, the detectives solicited sexual services, once by using the abbreviation "FS" (by which they meant certain "full service" sex) and once by expressly using the word "sex." The reply to the solicitation was "we can discuss in person honey," and negotiation of price immediately followed. The recipient of the solicitation then offered the detectives a "two girl special." The detectives asked whether the second "girl" was "young"; the response was "[y]es she's young honey." At one point, the recipient of the solicitation asked, "[A]re you affiliated with law enforcement?" The detectives further testified that in prostitution activity, a "pimp" commonly will drive the prostitute to an appointment and wait until the conclusion of the appointment to drive her away.

¶10        The superior court denied the motion to suppress, finding that the State met its burden by a preponderance of the evidence to establish that the stop, the search and the seizure were lawful. We agree. Based upon the training and experience of the detectives, the nature of their undercover operation, the sexually explicit substance of the advertisement, its placement in "backpage.com," and the illicit content of the text messages, the detectives had reasonable suspicion that the person or persons who responded to their texts were engaging or about to engage in prostitution. When Keeten arrived with two females at the appointed place and time, the officers thus had reasonable, articulable suspicion that he was transporting the females for prostitution in violation of A.R.S. § 13-3210 (2019) or was acting as their "pimp" in violation of A.R.S. § 13-3203 (2019).

¶11        Given the totality of the circumstances, the superior court did not err by denying Keeten's motion to suppress.

## B.    Purported Disclosure and *Brady* Violations.

¶12        Keeten next argues the State violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and Arizona Rule of Criminal Procedure 15 by failing to disclose copies of the "backpage.com" advertisement and the text messages before the first evidentiary hearing. Keeten contends the superior court erred by denying his multiple motions for sanctions based on the alleged violations.

¶13        Rule 15.7 governs a superior court's duty and power to sanction a party for a discovery violation. The court maintains broad discretion to determine the nature of a sanction. *See State v. Moody*, 208 Ariz.

424, 454, ¶ 114 (2004); *State v. DeCamp*, 197 Ariz. 36, 40, ¶ 22 (App. 1999). We review the imposition of a discovery sanction for an abuse of discretion. *Moody*, 208 Ariz. at 454, ¶ 114. The superior court abuses its discretion in ruling on a motion for a discovery sanction "only when 'no reasonable judge would have reached the same result under the circumstances.'" *State v. Naranjo*, 234 Ariz. 233, 242, ¶ 29 (2014) (quoting *State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004)). A sanction must be proportional to the discovery violation. *State v. Payne*, 233 Ariz. 484, 518, ¶ 155 (2013). An appropriate sanction "should have a minimal effect on the evidence and merits of the case." *State v. Towery*, 186 Ariz. 168, 186 (1996).

¶14 We likewise review a superior court's ruling on an alleged *Brady* violation for an abuse of discretion. *See State v. Arvallo*, 232 Ariz. 200, 206, ¶ 36 (App. 2013). Under *Brady*, the State is required to disclose all exculpatory evidence in its possession that is material to the issue of guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citing *United States v. Agurs*, 427 U.S. 97, 110 (1976), and *Brady*, 373 U.S. at 87); *see also* Ariz. R. Crim. P. 15.1(b)(8), (f)(2), (3) (disclosure requirements). To establish a *Brady* violation, a defendant must show: (1) the undisclosed evidence is favorable, i.e., exculpatory or impeaching, for the defendant; (2) the State failed to disclose the evidence, whether intentionally or inadvertently; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). If the State fails to timely disclose exculpatory evidence, the court may impose sanctions based on the degree of prejudice caused and the availability of sufficient, less stringent remedies. *See State v. Ramos*, 239 Ariz. 501, 504, ¶ 9 (App. 2016).

¶15 The disclosure issue arose at the conclusion of the evidentiary hearing, after a detective had testified about the "backpage.com" advertisement and the text messages. The detective testified on cross-examination that copies of the advertisement and the texts may be available for review. According to the prosecutor, the items had not been impounded, and hence had not been disclosed, because no prostitution arrest was made.

¶16 Keeten requested disclosure of the items. The superior court ordered the State to make the disclosure and recessed the hearing in the meantime. After the State disclosed the items, Keeten filed several motions for sanctions, alleging discovery violations. The court granted Keeten a second evidentiary hearing and set the hearing for a date more than three months after the State disclosed the materials at issue.

**¶17** In denying Keeten's motion to suppress, the superior court also denied his motions for sanctions. The court ruled the State should not be sanctioned for failing to disclose the items before the first day of the hearing and that Keeten had not shown any prejudice arising out of what the court deemed an ancillary matter.

**¶18** *Brady* applies only to exculpatory evidence, and Keeten argues the advertisement and text messages were exculpatory because they stopped short of showing an express "sex for money" agreement. The advertisement and text messages, however, constituted inculpatory, corroborating evidence of prostitution that included sexually explicit exchanges concerning negotiations over the price to be paid for services, along with concern for law enforcement contact, all of which directly implicate a "sex for money" transaction. *See Strickler*, 527 U.S. at 281-82 (*Brady* evidence must be favorable to the defendant). Moreover, as noted, the issue to which the advertisement and text messages were relevant was whether the officers had reasonable suspicion of prostitution to conduct an investigatory stop; an express agreement was not required.

**¶19** Additionally, when presented with the disclosure issue at the end of the first day of the hearing, the superior court recessed the hearing to address the issue and only resumed the hearing three months after the State had disclosed the items. Even if it could be said that the State "suppressed" the items under these circumstances, the significant length of time between the eventual disclosure of the materials and the second day of hearing remedied any potential prejudice to Keeten. *See id.* (no *Brady* violation absent prejudice).

**¶20** As for the superior court's decision not to impose a discovery sanction under Rule 15, both the 2017 and 2018 versions of Rule 15.7 required the court to consider whether a party's failure to comply with discovery obligations was (1) harmless or (2) could not have been disclosed earlier even with due diligence. *See* Ariz. R. Crim. P. 15.7(b) (2017); Ariz. R. Crim. P. 15.7(a) (2018).[3] Here, to remedy any possible prejudice, the

---

[3] Rule 15.7 was modified, but the relevant provision remained substantively the same. *Compare* Ariz. R. Crim. P. 15.7(b) (2017) *with* Ariz. R. Crim. P. 15.7(a) (2018). The modifications became effective January 1, 2018. Ariz. R. Crim. P. 15.7(a) (2018). Keeten's first three motions for sanctions were filed in 2017; he filed his final motion in 2018. The record does not contain a ruling on the 2018 motion, but it raised similar issues as the earlier motions and we deem it denied as a matter of law. *See State v. Hill*, 174 Ariz. 313, 323 (1993).

superior court continued the evidentiary hearing more than 90 days after the State had completed its disclosure, giving Keeten the opportunity to use the materials to the extent he thought they were exculpatory. *See State v. Martinez-Villareal,* 145 Ariz. 441, 448 (1985) ("In order for a reviewing court to find an abuse of discretion, appellant must demonstrate that he suffered prejudice by nondisclosure."); *see also State v. Lee*, 185 Ariz. 549, 556 (1996) ("The trial court's failure to impose a particular sanction, or any sanction at all, was not an abuse of discretion" when the defendant had "suffered no prejudice.") In denying the motions for sanctions, the superior court found that Keeten failed to show any prejudice resulting from the delayed disclosure, meaning any failure at the outset by the State to comply with its disclosure obligations was harmless. The court did not abuse its discretion in making that ruling.

## C.     Motion for Mistrial.

¶21          Keeten finally argues the superior court erred by denying his motion for mistrial after a witness violated an order on a motion *in limine*. We review the denial of a motion for mistrial for an abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000). In evaluating whether a mistrial is warranted, the superior court "is in the best position to determine whether [improper] evidence will actually affect the outcome of the trial." *Id*. When improper evidence has been admitted, the superior court should consider: (1) whether the remarks brought information to the jurors' attention that they would not be justified in considering to reach their verdict; and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks. *Id*. Because a "declaration of a mistrial is the most dramatic remedy for trial error," it should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).

¶22          After jury selection, Keeten moved *in limine* to preclude any reference to the fact that he was on "intensive probation" at the time of his arrest, arguing such evidence would be excessively prejudicial. The State agreed with Keeten's request, and the superior court ordered that the reference would be precluded. The court, however, permitted the State to offer evidence that Keeten was on felony supervised probation to prove his status as a prohibited possessor.

¶23          At trial, responding to a question on cross examination about whether Keeten was performing community service on the date of the incident, Keeten's probation officer stated that Keeten "had it on his

intensive -- sorry.  He had it on his weekly schedule, yes."  The testimony concluded without any other mention of "intensive probation."

¶24        Keeten moved for a mistrial, and the prosecutor advised the court that he had instructed the probation officer both orally and by email not to mention "intensive."  The superior court denied the motion but offered to provide a curative instruction.  Keeten declined the court's offer.

¶25        Although the witness's use of "intensive" referred to information the court had precluded, the witness stopped before finishing saying the phrase and the jury heard no other testimony concerning "intensive probation."  Throughout trial, Keeten did not dispute that he was a prohibited possessor; indeed, early in jury selection, his counsel informed the jury of that fact.  The superior court permitted the State to present evidence that Keeten was on felony supervised probation.  Thus, any potential prejudice resulting from the statement at issue was inconsequential in relation to the extensive undisputed evidence that Keeten had a prior felony conviction for which he was on supervised probation.

¶26        Considering the partial nature of the statement and the witness's self-correction, the jury may have interpreted the phrase simply as a misstatement.  The absence of any juror questions regarding the phrase or Keeten's type of probation supports that proposition.  In any event, the single, partial use of the phrase did not provide sufficient cause for a mistrial.  The superior court did not abuse its discretion by denying the motion and offering to give a curative instruction as an alternative.

## CONCLUSION

¶27        For the foregoing reasons, we affirm the conviction and resulting sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA